PER CURIAM.
The appellant, Jerrold Stewart, appeals his conviction and sentence for one count of sexual battery on a person 12 years of age or older but less than 18 years of age (A.S.) while in a position of familial authority contrary to section 794.011(8)(b), Fla. Stat. (2010). On appeal, he argues that the trial court erred in denying his motion for new trial following inflammatory prose-cutorial comments during closing. He also argues that the trial court erred in allowing the State to present irrelevant, prejudicial “bad acts” evidence. We disagree and affirm.
Prior to the appellant’s trial for sexual battery against A.S., the State filed a *121 Williams[1] rule notice that it intended to introduce evidence of acts against two other victims. The first set of acts occurred between 1991 and 1997 against S.C., the appellant’s step-daughter, who was between the ages of seven and 13. The notice alleged instances of digital penetration in the family home, most of which occurred while S.C. was sleeping. The second set of acts occurred between 1997 and 1999 against B.S., the appellant’s wife’s daughter, who was between the ages of nine and 10. The notice alleged instances of digital penetration in the family home and that, on one occasion, the appellant snuck into B.S.’s bedroom and attempted to molest B.S. while she slept.
The appellant filed a motion to exclude the evidence. Following a hearing, the trial court entered an order granting admission of the Williams rule evidence that made the following findings. The incidents involving S.C. and B.S. were proven by clear and convincing evidence. The probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The trial court stated that it was “aware that S.C. and B.S.’s cases differ somewhat from the victim’s allegations in the instant case,” but noted that the strict similarity requirement between the charged and collateral offenses had been abrogated by section 90.402(2)(b), Florida Statutes (2010). The evidence showed an underlying pattern of molestation where the appellant was in a familial or custodial setting with the victims and the molestation occurred in the home. The appellant’s attempts occurred most often when the victims were asleep, and the victims were all underage females. The appellant’s pattern of behavior demonstrated a modus operandi, an absence of mistake, intent, opportunity, and plan.
The case proceeded to trial. A.S., the appellant’s biological daughter, gave the following testimony. In 2010, when, she was 17 years old, she had her wisdom teeth removed under anesthesia. The appellant drove A.S. home from surgery and took her inside the family home to her bedroom. A.S. was still groggy from the anesthesia. While the appellant was changing her clothes, A.S. felt the appellant touch her vagina and place either his finger or his penis in her vagina. About five to 10 minutes later, the appellant left the room, and A.S. fell asleep. When she awoke and went to the bathroom, she had a burning sensation while urinating and noticed blood in her underwear. A.S. confided in her half-sister, S.C., and an aunt, and law enforcement was eventually called.
The State proffered S.C.’s testimony, and the trial court heard argument from both sides regarding the admissibility of the testimony. The trial court allowed some of the proffered testimony, but restricted other testimony that it believed would be prejudicial. After the trial court provided the jury with a limiting instruction on the Williams rule evidence, S.C. testified to the following. While S.C. lived with the appellant, he would come into her room while she was sleeping, and she could feel him touching her vagina. On one occasion when she was 12 years old, she awoke, and the appellant had his fingers in her vagina. On another occasion when S.C. was 10 years old, her mother walked into her room at night and saw the appellant with his finger in her vagina.
The State then introduced other testimony including an FDLE expert who testified that semen was identified on A.S.’s vaginal swab and underwear. A DNA analyst also testified that a partial male profile was obtained from A.S.’s underwear that was consistent with the appellant to *122 the extent that 0.177 percent of males would have the same DNA profile.
The State then proffered the testimony of B.S. The trial court again heard argument on the admissibility of the evidence. The trial court articulated the appropriate legal standard for consideration and explained its decision to allow B.S.’s testimony. The trial court again gave a limiting instruction on the Williams rule evidence prior to B.S.’s testimony. B.S. testified that she lived with the appellant between the ages of eight and 12. When she was between the ages of 10 and 11, the appellant digitally penetrated her on several occasions in the family home. On one occasion, the appellant came into her bedroom while she was sleeping. She awoke and confronted the appellant, who made an excuse for being in the room and left.
In closing arguments, the prosecutor stated:
The State is not asking you, and there is no box to check whether or not [the appellant is] guilty of anything he did to [B.S.] or [S.C.]. Today is about [A.S.], it’s about what he did to his daughter. I went ahead and put together a little bit of a flow chart of the family, because I know there was confusion, there are a lot of people, and it took both the State, and I believe the defense, and I put together who everyone was in that house, and when they’re all living there. The males are blue, the females are pink. And today you heard from [S.C.], [B.S.], and [A.S.], the only daughter left in that house is [D.S.], who is three. That’s why that evidence is so important. To prove that intent, to prove that motive, to prove that opportunity, the absence of mistake. This is the family that’s left.
When you’re asked to deliberate and think about this case, please remember that your job is not to feel bias or sympathy for anyone, for the defendant, for the victims. We’re not asking you to convict him of the crime because you feel bad that some girls came in here and were upset. We’re asking you to convict because they were molested and raped.
Defense counsel objected to the statements and moved for a mistrial. Defense counsel argued that the prosecutor’s statements, which had been made while she was highlighting a PowerPoint family tree, made the obvious suggestion that D.S., the appellant’s three-year-old biological child, was the only female who had not yet been molested. Defense counsel argued that the comments inappropriately suggested the appellant’s propensity and constituted a “call to arms” to the jury that if it did not convict, the appellant would molest D.S.
The State responded that it had addressed the limited use of Williams rule evidence and that the prosecutor’s statement was a literal statement of the evidence regarding who remained in the home and the fact that D.S. had not been molested. The trial court denied the motion for mistrial. The jury was again provided with a limiting instruction on the Williams rule evidence and returned a verdict finding the appellant guilty as charged.
The appellant filed a motion for new trial arguing, among other things, that the trial court erred in allowing the Williams rule evidence and denying the appellant’s motion for mistrial based upon the State’s improper closing argument. The trial court denied the motion for new trial.
On appeal, the appellant first argues that the trial court erred in denying his motion for new trial when the State inflamed the jury during its closing argument. We review the trial court’s denial of the motion for mistrial following allegedly improper prosecutorial comments for *123 an abuse of discretion. See Salazar v. State, 991 So.2d 364, 371 (Fla.2008). “In order for [a] prosecutor’s comments to merit a new trial, the comments must deprive the defendant' of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise.” Spencer v. State, 645 So.2d 377, 383 (Fla. 1994).
Finding this issue sufficiently preserved for appeal, we find that the prosecutor’s comments were not so inflammatory and prejudicial that they warranted a new trial. The context of the prosecutor’s closing shows that she created a PowerPoint family tree to document the familial relationships. Rather than a “call to arms,” the prosecutor’s comments can reasonably be considered a literal comment on the evidence. Specifically, the fact that D.S., who was three, was the only non-testifying daughter currently living in the home. The prosecutor’s statements are not so prejudicial so as to vitiate the entire trial and warrant reversal. The comments do not rise to the level of a character attack warranting a new trial. The cases relied on by the appellant involve prosecutorial comments that are much more egregious than those in the instant case. Cf. Chambers v. State, 924 So.2d 975 (Fla. 2d DCA 2006) (finding the prosecutorial commentary on the defendant’s immoral and improper relationship with 16-year-old victim in burglary, assault, and robbery prosecution that did not involve the age of the victim was an improper and irrelevant character attack); Petruschke v. State, 125 So.3d 274 (Fla. 4th DCA 2013) (reversing lewd and lascivious molestation conviction due to, among other things, collective effect of prosecutorial comments that included repeatedly referring to the defendant as a pedophile). Moreover, even if we were to consider the comment improper, the isolated nature of the comment coupled with the evidence presented at trial would not have constituted reversible error. Cf. Jenkins v. State, 96 So.3d 1110 (Fla. 1st DCA 2012) (finding prosecutor’s comment, although improper, was isolated and not grounds for a mistrial).
The appellant’s second issue on appeal argues that the trial court erred in admitting the Williams rule evidence that did nothing more than show his propensity and bad character. We review the admissibility of evidence for an abuse of discretion. See Easterly v. State, 22 So.3d 807, 814 (Fla. 1st DCA 2009).
In Williams, the Florida Supreme Court laid out the initial benchmark for admitting evidence of other crimes, wrongs, or acts: “[RJelevant evidence will not be excluded merely because it relates to similar facts which point to the commission of a separate crime. The test of admissibility is relevancy. The test of inadmissibility is a lack of relevancy.” 110 So.2d at 659-60 (Fla.1959). This holding was later codified in the Florida Statutes:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
§ 90.404(2)(a), Fla. Stat. (2010).
As an initial matter, the trial court must find that the prior acts were proven by clear and convincing evidence. See Mclean v. State, 934 So.2d 1248, 1262 (Fla. 2006).
The Legislature has adopted a “relaxed standard of admissibility” with regard to Williams rule evidence in child molestation cases. See Easterly, 22 So.3d at 814. That standard provides:
*124 in a criminal case in which the defendant is charged with a crime involving child molestation, evidence of the defendant’s commission of other crimes, wrongs, or acts of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.
§ 90.404(2)(b)l., Fla. Stat. (2010).
The enactment of the relaxed standard of admissibility means that relevance of Williams rule evidence in these cases will not primarily turn on an analysis of the similarity of the offenses. See McLean, 934 So.2d at 1259 (explaining that section 90.404(2)(b) “broadly provides that evidence of the defendant’s commission of other acts of child molestation is admissible regardless of whether the charged and collateral offenses ... share any similarity.”). This does not mean, however, that the similarity of the offenses is completely removed from the trial court’s analysis. See Easterly, 22 So.3d at 815 (stating that even under the relaxed standard the evidence is subject to relevancy requirements and the section 90.403 balancing test, which means that the similarity of the charged offense to the collateral offenses is still important).
The appellant argues that the trial court failed to recognize that the Williams rule evidence was more dissimilar than similar, making it more prejudicial than probative. He cites the following dissimilarities: S.C. and B.S. were much younger when the acts occurred; the acts against S.C. and B.S. occurred in the 1990s and were not temporally close to the acts against A.S.; A.S. alleged penile penetration whereas S.C. and B.S. claimed digital penetration; A.S. was under the influence of anesthesia; and finally S.C. and B.S. were not the appellant’s biological children.
The trial court properly found that the testimony of S.C. and B.S. was proven by clear and convincing evidence. The crux of the appellant’s argument places a heavy focus on the dissimilarities of the evidence; however, “ ‘similar’ does not mean ‘exactly the same.’” See Adkins v. State, 605 So.2d 915, 919 (Fla. 1st DCA 1992). Here, the victims were all underage females when the acts occurred. The acts occurred in the family home while the appellant was in a custodial or familial role. In addition, the acts primarily occurred when the victims were vulnerable, either sleeping or under the effects of anesthesia. The fact that the acts against S.C. and B.S. involved digital penetration rather than penile penetration is not necessarily dispositive. See id. The trial court appropriately considered all the factors in determining that the evidence was admissible. The appellant has failed to demonstrate that the evidence was so dissimilar as to justify disturbing the trial court’s ruling.
The evidence also did not become an impermissible feature of the trial. Evidence becomes a feature of the trial when it “transcend[s] the bounds of relevancy to the charge being tried and the prosecution devolves from development of facts pertinent to the main issue of guilt or innocence into an assault on the character of the defendant.” Easterly, 22 So.3d at 815 (citing Conde v. State, 860 So.2d 930, 935 (Fla.2003)). Here, the State did not overly focus on the evidence in its arguments. Moreover, the jury was instructed on multiple occasions as to the limited purpose of the Williams rule evidence.
For the foregoing reasons, the appellant’s conviction is AFFIRMED.
WOLF and ROWE, JJ., and PARKER, GREGORY S., Associate Judge, concur.

. Williams v. State, 110 So.2d 654 (Fla.1959).